IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| David Graham Goodman, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13cv540 (AJT/IDD) |
| | ) | |
| Kenneth W. Stolle, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

David Graham Goodman, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that he was the victim of excessive force during his former incarceration at the Virginia Beach Correctional Center ("VBCC"). The matter is now before the Court on plaintiff's Motion for Summary Judgment [Dkt. No. 91, 94] to which defendants have filed an opposition. [Dkt. No. 97] Also before the Court is a Renewed Motion for Summary Judgment filed jointly by the defendants, along with a supporting Memorandum of Law with exhibits and the notice required by Local Rule 7(k) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 95-96] Plaintiff has submitted an opposition to the Renewed Motion for Summary Judgment, as well as a Motion for Subpoenas to be Issued. [Dkt. No. 99, 101] For the reasons which follow, defendants' Renewed Motion for Summary Judgment will be granted, and summary judgment will be entered in their favor. Plaintiff's Motion for Summary Judgment will be denied, and his Motion for Subpoenas to be Issued will be denied, as moot.

### I. Background

#### A. Plaintiff's Allegations

In the amended complaint [Dkt. No. 47], which is the operative complaint in the lawsuit, Goodman alleges that on November 7, 2012 he was transported from the Chesapeake City Jail to

VBCC for a one-day stay to allow him to attend a probation violation hearing in the Virginia Beach Circuit Court. Am. Compl. at 4. When Goodman returned from his court appearance he was placed in VBCC's holding area on a concrete bench. Id. § IV. When instructed to return to his wheelchair to be transported to the medical department, Goodman asked, "To a lower bunk?" Upon being informed he would be on the floor, Goodman responded, "No! I have spinal cord damage, I cannot be on the floor!" Id. At that point Deputy C. Hayes grabbed Goodman by the neck of his jumpsuit, which caused him neck pain, and dragged Goodman for 50 to 60 feet across a concrete floor, threw him into a holding cell, and left him lying on the floor.

Sometime after 6:00 p.m. Sgt. T. Moissett instructed Goodman to get up off the floor and return to his wheelchair. With assistance from Sgt. Roland, Goodman complied. As he was being moved to a new location Goodman was "displaced from the wheelchair," and Sgt. Moissett "grabbed [him] from the floor with severe force" and then "slammed [him] into the floor again," cursed, and then handcuffed and dragged him down a hallway for approximately 100 yards. As a result Goodman suffered severe pain in his neck, back and right shoulder. Id.

When Goodman arrived at the medical isolation department Deputies Z. Diggs and C. Repass slammed him into the bare concrete floor, which again caused him to suffer severe back and neck pain. Id. Diggs stepped on Goodman's back while handcuffs were being removed, and Deputy Repass kneeled on his neck and ground his face into the floor, causing him to lose consciousness. When Goodman's left hand was freed from the handcuffs Deputy Repass placed her weight on the hand, which caused damage that required surgery. Id. Repass also placed her thumb on Goodman's neck and a finger on a pressure point behind his right ear, and Goodman felt "extreme pain." Id.

The named defendants are Deputies C. Hayes, C. Repass, and Z. Diggs, and Sgt. T.

Moissett.[1] Goodman alleges that each defendant violated his Eighth Amendment right to be free from cruel and unusual punishment, and also committed the tort of assault and battery. As relief, Goodman seeks an award of compensatory and punitive damages, as well as a temporary retraining order to prevent reprisal by the defendants.

B. <u>Initial Motion for Summary Judgment</u>

Defendants initially moved for summary judgment on January 12, 2015. [Dkt. No. 67 - 68] In response, Goodman filed a Motion to Deny/Squash Motion for Summary Judgment [Dkt. No. 70], arguing in pertinent part that he should be allowed access to video footage mentioned by the defendants in their summary judgment request.[2] By an Order dated June 24, 2015, Goodman's motion was granted, and defendants were directed to provide the video footage of the incident in question to Goodman and to the Court within thirty days. Defendants' Motion for Summary Judgment was denied, without prejudice to renewal, if appropriate.

On July 14, 2015, defendants filed the affidavit of Capt. Linda E. Richie, the Commanding Officer of Professional Standards and Legal Division of the Virginia Beach Sheriff's Office. [Dkt. No. 74] In it, Capt. Richie states that she was requested by counsel for the Sheriff's Department to provide a copy of the video footage from VBCC regarding the November 7, 2012 incident involving Goodman and several deputies. <u>Id.</u>, ¶ 3. She attests that she was unable to do so for the following reasons:

> 4. Shortly after the incident, the video footage was reviewed by the deputies' supervisor, and [the]

---

[1] Virginia Beach Sheriff Kenneth Stolle also initially was named as a defendant in the action. Goodman's claim against him was dismissed with prejudice for failure to state a claim pursuant to §1915A(b)(1) on November 14, 2014. [Dkt. No. 59]

[2] <u>See</u> Dkt. No. 68, Def. Mem., Ex. A, at unnumbered p. 4, where defendant Hayes states in his November 7, 2012 incident report that "cameras 12, 13 and 14 were reviewed."

3

> internal affairs division, as is customary for every
> use of force incident that occurs at the facility.
>
> 5. Because there were no violations of policy; nor
> evidence of any excessive force; and no complaint
> by the inmate at the time, the video was not
> preserved.
>
> 6. After 30 days, the jail video system automatically
> overwrites existing videos unless they are down-
> loaded for preservation.
>
> 7. Because there was no inmate complaint, no
> violation of the use of force policy and no evidence
> of excessive force, the videotape in question was
> never downloaded and preserved for future use.

[Dkt. No. 74]

### C. Renewed Motion for Summary Judgment

Defendants renewed their Motion for Summary Judgment on July 26, 2018. [Dkt. No. 95] They filed a supporting memorandum with exhibits, and provided Goodman with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 96] Goodman subsequently filed an opposition. [Dkt. No. 99] Also pending as noted above is Goodman's Motion for Summary Judgment [Dkt. No. 91, 94],[3] which the defendants oppose. [Dkt. No. 97] Accordingly, this matter is ripe for disposition.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[3]While there are two Motions for Summary Judgment by Goodman pending on the docket, they appear to be identical, with the exception that one includes as an attachment a copy of a letter sent by Goodman to the Clerk of this court. [Dkt. No. 94]

of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

A. Defendants' Motion for Summary Judgment

The defendants have established the following material facts. On November 7, 2012, when Goodman had completed the intake process at VBCC, Deputy Hayes asked him to sit in a

5

wheelchair so that he could be taken "up to the floors." Dkt. No. 96, Ex. C, Hayes Aff. ¶ 3. Goodman initially was compliant, and asked where Hayes was taking him. Hayes responded that Goodman was going to a medical block, and Goodman stated that he did not want to go to a medical block and got out of the wheelchair and sat on a bench. Id. ¶ 4. Hayes instructed Goodman to get back in the wheelchair, and Goodman responded, "Fuck you punk, I'll beat your fucking ass." Id.; Dkt. No. 96, Ex. A, Hayes Incident Report. Hayes took hold of Goodman's arm near the arm pit and stood him up to escort him to a holding cell. Hayes Aff. ¶ 4. As they walked toward a holding cell Goodman suddenly dropped all of his weight to the floor. Deputy Hayes told him to get up and go into the cell, and Goodman responded, "Fuck you punk, I'm not doing it." Hayes Aff. ¶ 5; Hayes Incident Report. Because Goodman refused to get up, Hayes had to drag him into the cell. Hayes Aff. ¶ 5. Once Goodman was inside the cell he deliberately and repeatedly put his foot in front of the cell door and told Deputy Hayes to go ahead and slam his foot in the door. Hayes eventually was able to move Goodman's foot and close the cell door. Hayes Aff. ¶6. Hayes notified a sergeant of the incident, and the security camera footage was reviewed and confirmed his report of the incident. Hayes Aff. § 8.

After Goodman was seen and cleared by a nurse, Deputy Repass went to the holding cell to escort Goodman to his housing assignment. Dkt. No. 96, Ex. D, Repass Aff. ¶ 3. Repass instructed Goodman to stand up and exit the cell, and when he refused she asked Cpl. Moissett to get a wheelchair. Id. Goodman became agitated and started to yell that if he saw the deputy from the other team on the street he would "blow his brains out." Dkt. No. 96, Ex. A, Repass Incident Report. Repass instructed Goodman numerous times to step out of the cell and sit in the wheelchair, and Goodman refused all verbal commands. Repass Aff. ¶ 3.

At that point Deputy Repass, Deputy Diggs, and Cpl. Moissett entered the holding cell

and assisted Goodman to his feet. Repass Aff. ¶ 4; see also Dkt. No. 96, Ex. E, Diggs Aff. ¶ 3; Dkt. No. 96, Ex. F, Moissett Aff. ¶ 3. Cpl. Moissett placed Goodman in the wheelchair and pushed him out of intake and down the hall toward his housing assignment. Id. While in the hallway, Goodman purposefully threw himself out of the wheelchair, and again refused all verbal commands to get up or move. Id. Deputies Diggs and Repass each took one of Goodman's arms and began to escort him down the hallway. Goodman again became disruptive and aggressive, and attempted to pull his arm out of Deputy Diggs' control. Deputies Diggs and Repass were required to restrain Goodman while Cpl. Moissett placed him in handcuffs. Repass Aff. ¶ 5; Diggs Aff. ¶¶ 4-5; Moissett Aff. ¶ 4. In doing so Diggs and Repass rolled Goodman onto his stomach, and Repass accessed a pressure point behind his right ear to keep him on the ground. Repass instructed Goodman to stop resisting, to follow directions, and to calm down. Dkt. No. 96, Ex. A, Repass Incident Report.

After Goodman was brought to his feet Deputies Diggs and Repass continued to escort him to his housing assignment. Repass Aff. ¶ 6; Diggs Aff. ¶ 6; Moissett Aff. ¶ 5. As they did so Goodman attempted to hit his head on each door frame they passed through. Id. When they reached Goodman's housing assignment Diggs and Repass placed him against a wall so another deputy could open the cell door, and Goodman purposefully banged his head against the wall and suffered a small laceration to his left brow bone. Id. After Goodman was placed in the cell he complied with all verbal commands. Moissett Aff. ¶ 6.

Goodman was seen in his cell by one of the nurses at VBCC following the foregoing events. He told the nurse he was in a fight and thrown on the ground and his "head was busted open." Dkt. No. 96, Ex. A, Triage Report of Courtney A. Hoyles. The nurse noted that Goodman "was upset and expressed his interest in viewing the videos for a lawsuit against those involved

in the incident." Id. Goodman was transported in a wheelchair to the medical department, where it was noted that he had sustained a "small approximately 0.25" laceration to outer edge of left brow bone by the hairline." The wound was cleaned, patted dry with gauze, closed with wound glue, and covered with a Band-Aid. Id. A "neuro-check" was clear, and Goodman was returned to his cell because he was "feeling better." Id.

Goodman filed an opposition to defendants' summary judgment motion on August 6, 2018. [Dkt. No. 99] The response is neither sworn nor notarized, and consists largely of a reiteration of the factual allegations in the complaint. Plaintiff's pleading thus is insufficient as a matter of law to oppose a motion for summary judgment, as it is unsworn and does not subject the author to the penalty of perjury for any misstatements. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Accordingly, plaintiff's unsworn statement cannot be considered here.[4]

---

[4] Moreover, even if plaintiff's response had been sworn, the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party is a pro se prisoner entitled to liberal construction of his pleadings; a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, the factual allegations in Goodman's response amount to nothing more than a conclusory recapitulation of the complaint, without additional supporting evidence. Thus, even had it been sworn, the pleading would still be insufficient to defeat defendants' summary judgment motion. Doyle v. Sentry Ins., 877 F.Supp.1002, 1005 (E.D. Va. 1995) (nonmoving party cannot rely on "the allegations or denials contained in the pleadings" to defeat summary judgment).

In determining whether the Eighth Amendment has been violated by the use of force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also, Whitley v. Albers, 475 U.S. 312, 320-21 (1986). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident." Hudson, 503 U.S. at 9. The extent of injury suffered by the inmate is relevant to the Eighth Amendment inquiry, both because it may suggest whether the use of force could plausibly have been thought necessary in a particular situation, Whitley, 475 U.S. at 321, and because it may provide some indication of the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (rejecting the notion that an excessive force claim involving only *de minimis* injury is subject to automatic dismissal). The Eighth Amendment generally excludes from constitutional recognition *de minimis* uses of physical force, Hudson, 503 U.S. at 9, and an inmate who complains of a "push or shove" that causes no discernable injury "almost certainly" fails to state a valid excessive force claim. Id., quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Nonetheless, "[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 130 S.Ct. at 1178-79.

Even were plaintiff's unsworn factual allegations considered, he has failed to challenge the core facts presented by the defendants through sworn declarations concerning the circumstances surrounding the encounters at issue. Based on those uncontradicted facts, each of the named defendants, as they attest, used the minimum force necessary to maintain order and to secure Goodman's compliance with their instructions. Hayes Aff. ¶ 9; Repass Aff. ¶ 9; Diggs

Aff. ¶8; Moissett Aff. ¶ 7. Analysis of the established facts bears out these assertions. It is undisputed that Goodman was disruptive and uncooperative with the defendants; first, when he was being escorting to the holding cell he dropped to the floor and refused to get up or move; and second, when he was being taken from the nurse's area to his housing assignment he threw himself out of his wheelchair to the floor and again refused to move. In both instances, the evidence indicates that defendants took appropriate measures involving reasonable amounts of force to secure Goodman's compliance with their instructions. In the first instance Deputy Hayes was required to drag Goodman into the holding cell, after which Goodman was seen by a nurse and cleared to go to the medical block. Hayes Aff. ¶¶ 5 - 7. In the second, Deputies Diggs and Repass restrained Goodman on the ground and accessed a pressure point to allow Sgt. Moissett to place him in handcuffs. Repass Aff. ¶ 5; Diggs Aff. ¶¶ 4-5; Moissett Aff. ¶ 4. Significantly, neither of these uses of force resulted in any harm or injury to Goodman. Instead, the sole injury Goodman suffered during his temporary incarceration at VBCC was the quarter-inch cut he sustained to his brow bone when he purposefully hit his head against a wall as he was being escorted to his housing assignment.

Under these circumstances, there is no suggestion in the evidence presented that the defendants applied force to Goodman maliciously or sadistically with the intent of causing him harm. Instead, it is apparent that in response to Goodman's disruptive and uncooperative behavior they employed a reasonable quantum of force in good-faith efforts to maintain and discipline. Accordingly, Goodman's Eighth Amendment claim fails, Hudson, 503 U.S. at 7, and defendants are entitled to the summary judgment they seek.[5]

---

[5]The absence of the videotape concerns the Court, particularly since, according to the nurse that examined the plaintiff, the plaintiff had stated his interest in viewing the videotape for a lawsuit shortly after the alleged incidents. The Court has encountered in other cases a failure on the part of

At this juncture Goodman's claims for assault and battery arising under Virginia state law are subject to dismissal. Where §1983 claims over which a district court otherwise would have original jurisdiction are subject to dismissal, there remains no basis to exercise supplemental or pendant jurisdiction over state tort claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.") Because Goodman's §1983 claims must be resolved in the defendants' favor, subject matter jurisdiction over his tort claims does not exist, and they will be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

B. Plaintiff's Motion for Summary Judgment

Also pending before the Court is a Motion for Summary Judgment filed by Goodman. [Dkt. No. 91, 94] The motion includes no discussion of the facts underlying his Eighth Amendment claims. Instead, Goodman argues that the affidavit supplied by the defendants concerning the unavailability of the video footage of the incident should be disregarded as a "blatant" effort by defense counsel to "hide the video from the Honorable Court." Id. at p. 4. He further suggests that the affidavits filed by the defendants in support of their Motion for Summary Judgment should be disregarded because they use "the same exact, rehearsed phrasing to describe the incident" and contain "no variations." Id. Lastly, Goodman provides the name

---

state authorities to preserve videotapes under circumstances where it arguably should have been preserved, notwithstanding the absence of any formal complaint or litigation, and advises that in the future it will examine critically the failure to preserve videotapes of physical altercations with inmates. Nevertheless, in this case, where the plaintiff has not challenged the sworn testimony concerning the circumstances surrounding his encounter with defendants, the Court concludes that the missing videotape is not an adequate ground for denying the defendants' motion for summary judgment.

11

of another inmate who also was held in medical isolation at VBCC on the date of the incident at issue, but he includes no statement from that inmate nor does he proffer what such a statement might contain. Defendants have filed an opposition requesting that Goodman's Motion for Summary Judgment be denied and their own Motion be granted for the reasons they set forth in their Memorandum of Law. [Dkt. No. 97]

For the reasons discussed above in connection with the defendants' Motion, Goodman has failed to demonstrate that he is entitled to the summary judgment he seeks. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323. Accordingly, his Motion for Summary Judgment must be denied.

## V. Conclusion

For the foregoing reasons, defendants' Renewed Motion for Summary Judgment will be granted, and judgment will be entered in their favor on plaintiff's § 1983 claims by an appropriate Order to be issued with this opinion. Plaintiff's tort claims will be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3), his Motion for Summary Judgment will be denied, and his Motion for Subpoenas to be Issued will be denied, as moot.

Entered this 26th day of Sept. 2018.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia