UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| DAVID GRAHAM GOODMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 1:13cv540 |
| v. | : | |
| | : | |
| KENNETH W. STOLLE, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULE 37(e)**

Defendants Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs ("Defendants"), by counsel, hereby submit this Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions Pursuant to Rule 37(e). Without any evidence to support his spoliation claim related to videos from the Virginia Beach Correctional Center ("VBCC"), plaintiff seeks to impose sanctions on the Defendants. For the reasons outlined below, the Defendants request this Court to deny plaintiff's baseless Motion (Doc. No. 140).

**I. BACKGROUND**

In November 2012, Mr. David Goodman was incarcerated at the Chesapeake Correctional Center ("CCC"). On November 7, 2012, he was transported to the Virginia Beach Correctional Center ("VBCC") to attend court in Virginia Beach, Virginia. After appearing in court, and after having his suspended sentence and probation revoked, Mr. Goodman returned to the VBCC in an agitated state. He was to be housed until the next morning when he was to be transferred back to the CCC. First, around 4:00p.m., Deputy Curtis Hayes, a deputy assigned to the intake area attempted to transport Mr. Goodman to his assigned cell in the medical block. Mr. Goodman refused to be transported, threw himself onto the floor and was uncooperative. As

a result, Mr. Goodman was not moved and was kept in the intake area by Deputy Hayes. Later that evening, around 7:00p.m., Deputies Todd Moissett, Crystal Repass, and Zachary Diggs attempted to move Mr. Goodman from a holding cell in the intake area to his assigned cell. Mr. Goodman, again, was agitated, threw himself out of his wheelchair and was uncooperative requiring deputies to handcuff him and walk him to his cell. As Mr. Goodman was being escorted to his cell, he intentionally hit his head on each door jamb he passed. Goodman then claimed Deputies Todd Moissett, Crystal Repass, and Zachary Diggs used excessive force in transporting him to this cell. Because Mr. Goodman purposefully hit his head against a wall during the transport, he was seen by a nurse who worked for an independent medical subcontractor, ConMed, hired to provide medical care to inmates at the VBCC. The nurse made a note in ConMed's medical records that Mr. Goodman "stated he was upset and expressed his interest in viewing the videos for a lawsuit against those involved in the incident." The Nurse never passed on this information to Sheriff Stolle or his staff. Mr. Goodman was cleared by the nurse, and he was transported to the CCC around 5:00am on November 8, 2012.

During the nearly thirteen hours Mr. Goodman was at the VBCC from the time he returned from court until his transfer, he never filed an inmate grievance with the VBSO. He never made a complaint to anyone at the VBSO that any deputy used excessive force against him while he was the VBSO. The nurse never made anyone at the VBSO aware of Mr. Goodman's "interest in seeing the videos for a lawsuit."

Capt. Linda Richie, the Commanding Officer of Professional Standards and Legal Division of the VBSO, performed an investigation because the deputies filed Incident Reports. She determined there was no violation of the use of force policy and no evidence of excessive

force and, pursuant to the policy and procedure of the VBSO, there was no need to preserve the video from that day. *See* Ex. 1, Aff. of Capt. Linda Richie.

It is undisputed that the VBCC was equipped with a video recording system supporting numerous cameras throughout the facility. At her deposition, Capt. Linda Ritchie that the computer program for the VBCC cameras was written for recordings to be maintained on the server for 30 days, at which point the recordings would be overwritten. *See* Ex. 2, Dep. of Capt. Linda Richie, Sept. 8, 2021, pp. 17-18. She testified further that upon receiving the request to provide recordings from the VBCC on November 7, 2012, months after the video was already overwritten, she personally determined that recordings from November 7, 2012 had been previously overwritten.  As Ms. Richie explained, the VBSO would download and preserve the video if the VBSO received a "specific complaint," if they "anticipated possible litigation," if "there was a violation of policy or procedures," if they "received a subpoena or any type of request for the video from an outside source within the timeframe that it was still available." *Id.*, p. 18. Because none of these situations applied, the video was overwritten on December 8, 2012.

Mr. Goodman first filed a Complaint with this Court on May 1, 2013, approximately five months after the video was already overwritten. The Complaint was not served on the Defendants.  The case languished because of Mr. Goodman's failure to file proper paperwork, was dismissed, appealed then later reinstated.  On or about August 15, 2013, the VBSO received a copy of the plaintiff's Amended Complaint.  This was the first notice the VBSO received that Mr. Goodman was making a claim for damages because of alleged excessive force by the Defendants.  By this point in time, the video had been overwritten.

Without sufficient evidence, Mr. Goodman cannot convert the automatic overwriting of video recordings prior to the VBSO's receipt of plaintiff's Amended Complaint on or about

August 15, 2013 into intentional and willful acts that would support the imposition of the extraordinary sanctions he seeks. The record does not support Mr. Goodman's claim that deputies employed by the VBSO deliberately or intentionally destroyed the video recordings or in bad faith destroyed the video for the purpose of depriving him of that evidence. As such, Mr. Goodman offers no basis for the Court to award sanctions, including an adverse inference instruction.

## II.  ARGUMENT

### A. The Automatic Overwriting of Video Footage Does Not Constitute Spoliation Under Federal Rule 37(e).

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Although the burden of proof in a spoliation sanctions motion is unsettled in the Fourth Circuit, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanctions like an adverse inference is sought." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018) (canvassing district court cases from the Fourth Circuit).

When electronically stored information ("ESI") is allegedly lost, Federal Rule of Civil Procedure 37(e) displaces the "traditional spoliation framework" and "establishes a multi-step analysis that courts must apply to determine if sanctions (or curative measures) are appropriate." *Sines v. Kessler*, 2021 U.S. Dist. LEXIS 204142, at *12 (W.D. Va. Oct. 22, 2021) (citing *Johns v. Gwinn*, 503 F. Supp. 3d 452, 462 (W.D. Va. 2020)); *Jenkins v. Woody*, 2017 U.S. Dist. LEXIS

9581, at *33-34 (E.D. Va. Jan. 21, 2017); *see* Fed. R. Civ. P. 37(e). Under Rule 37(e), "a movant must satisfy four threshold requirements before a court decides if any spoliation sanction is appropriate: (1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

After the movant makes the required "threshold showing under Rule 37(e), the 'court must then consider whether the movant has established one of two options that would permit imposing sanctions.'" *Sines*, 2021 U.S. Dist. LEXIS at *13 (quoting *Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 845 (S.D. W. Va. 2018)); *see* Fed. R. Civ. P. 37(e)(1)-(2). "[F]irst, under Rule 37(e)(1), the Court may impose a proportional sanction upon the finding of prejudice." *Knight*, 323 F. Supp. 3d at 845. Second, under Rule 37(e)(2), "[i]f, and only if, a court makes th[e] required finding of intent to deprive [the opposing party of relevant information], then a court may impose one of the three more severe sanctions, which includes an adverse instruction." *Id.* (citation omitted). But "[e]ven assuming that a movant satisfies the burden, and a court makes one of the two prerequisite findings, a court is not required to impose sanctions" within its broad discretion. *Id.* (citations omitted).

Here, Defendants do not dispute that the video was lost and that the video cannot be restored or replaced, under elements two and four of the four part threshold requirements established by the Court. Nonetheless, the Virginia Beach Sheriff's Office did not have a duty to preserve the video and the individual deputies did not have a duty to preserve the video and were not required to take steps to preserve the video because access and control over the video rested with VBSO not the Defendants.

**1. The Virginia Beach Sheriff's Office ("VBSO") Did Not Have a Duty to Preserve.**

To find spoliation, "the court must be satisfied that the party alleged to have spoliated the evidence had a "duty to preserve' relevant evidence, which the party then 'breach[ed] … through the destruction or alteration of the evidence." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 496 (E.D.Va. 2011) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521 (D.Md. 2010)).

As a threshold matter, the party alleging spoliation must establish that the adverse party "had a duty to preserve documents or materials that may be relevant to the litigation or pending litigation." *Id*. This Court recognizes that litigants are not required to preserve "every shred of paper, every e-mail or electronic document, and every back up tape." *Id.* (quoting *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)). A party that anticipates litigation is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *Id.* (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D.Va. 2006), vacated on other grounds, 523 F.3d 1374 (Fed. Cir. 2008)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591.

Here, the duty to preserve arose on August 15, 2013, when the VBSO received a copy of the plaintiff's Amended Complaint, first alerting Sheriff Ken Stolle to anticipated litigation. Prior to that point, a reasonable person would not have known that video would be relevant to anticipated litigation. Mr. Goodman never made a complaint to the VBSO or any employee of

the VBSO after the incident while he was housed at the VBCC. He never filed a grievance. The next day, he was transferred to the Chesapeake Correctional Center. No one from the Chesapeake Correctional Center notified the VBSO of a complaint made by Mr. Goodman. Following the transfer of Mr. Goodman between cells at the VBCC on November 7, 2012 and because of Mr. Goodman's behavior, the deputies involved filed use of force reports and Linda Richie was assigned to investigate. As Captain Richie testified, her purpose was to determine if staff acted properly and did not commit any violations on the Sheriff's Department's end. *See* Ex. 2, Dep. of Capt. Linda Richie, Sept. 8, 2021, pp.49, 51. Thus, Capt. Richie reviewed the incident reports and interviewed the deputies who she thought would be most important to the investigation. *Id.*, p. 51. She reviewed the video. *Id.*, p. 51. The nurse never reported Mr. Goodman's comments and she did not review the plaintiff's medical records from the nurse. *Id.*, p. 50-55. She concluded that there was no violation of the use of force policy and no evidence of excessive force. She did not find any wrongdoing by Sheriff's Office staff. *Id.*, p. 52.

Mr. Goodman never made a complaint to the VBSO. The Chesapeake Correctional Center never made a complaint to the VBSO. Together, Capt. Richie's investigation and the fact that Mr. Goodman did not make a complaint or file a grievance with the VBSO would lead a reasonable person to conclude that no excessive force was used. A reasonable person in Sheriff Stolle's shoes would not have anticipated litigation. Further, unbeknownst to anyone, by the time the VBSO received a copy of the plaintiff's Amended Complaint nine months after the incident, the video had been automatically erased.

Plaintiff asserts that the duty to preserve arose at the time of incident, arguing (i) a duty to preserve would arise immediately when "any inmate suffers a serious injury" and, specifically in this case, when Mr. Goodman "expressed his interest in viewing the videos for a lawsuit" to the

nurse who saw him after the incidents and cleared him for transfer to Chesapeake. Plaintiff, however, fails to tell the Court that the nurse does not work for the VBSO and Mr. Goodman's medical records are not shared with the Sheriff's department pursuant to HIPAA. The nurse works for a third-party independent contractor medical company. There is absolutely no evidence that the nurse relayed her conversation with Mr. Goodman to Sheriff Ken Stolle, Capt Linda Richie or any other employee of the VBSO. In plaintiff's scheme, every jail superintendent or Sheriff would have an affirmative duty to preserve video even if unaware of any wrongdoing by the jail's employees. Given the hours of video and interactions between jail staff and inmates recorded, this is unreasonable.

Plaintiff's reliance on *Taylor v. City of New York*, 293 F.R.D. 601 (S.D.N.Y 2013), is misplaced. In contrast to the case at bar, the facts in *Taylor* supported the court's conclusion that the duty to preserve arose when an inmate assault was investigated. In *Taylor*, the DOC investigator knew of hundreds of other lawsuits brought by inmates assaulted by others, and knew that the plaintiff had been beaten up and injured by another inmate, been taken to the emergency room and diagnosed with a broken jaw, and moved from the hospital to the jail's infirmary for at least a month. *Id*. at 610. The court focused on "the DOC's experience with prior litigation arising from inmate on inmate assaults," in concluding that the defendants reasonably should have anticipated that the plaintiff would initiate a claim specifically for failure to protect. *Id*.

What is reasonably anticipated in the spoliation context requires a "flexible fact-specific standard." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012). Here, there is no evidence that Sheriff Stolle had experience in past lawsuits where an inmate claimed the use of excessive force by his deputies, much less the deputies involved in this case. Inmates are

transported between cells all the time. The singular fact that an inmate claims a deputy used excessive force while transporting him to his cell does not dictate that a lawsuit against Sheriff Stolle or his deputies will ensue. On behalf of the Sheriff's Office, the City of Virginia Beach contracted with ConMed, an independent medical subcontractor, to provide all medical care to those incarcerated at the VBCC. Under the facts of this case, until the receipt of the Amended Complaint nearly nine months after the alleged incidents, Sheriff Stolle and his agents could not have reasonably anticipated a lawsuit under the facts of this case.

### 2. The Current Deputy Defendants Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs Did not Have a Duty to Preserve.

Assuming, *arguendo*, that the fact that the incident occurred in the way the plaintiff describes and plaintiff's communications with a third-party nurse not employed by the VBSO triggered a duty to preserve the video footage, that duty only belonged to the VBSO and should not be imputed to Defendants Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs as Defendants had no control over the retention. "Ordinarily, the attribution of fault to one party for another's spoliation is analyzed under principles of agency." *Muhammad v. Mathena*, 2016 U.S. Dist. LEXIS 171048, at *21-23 (W.D. Va. Dec. 12, 2016).

Here, neither the VBSO nor Sheriff Ken Stolle are party defendants. The VBSO and/or Sheriff Ken Stolle would be the principal and his deputies are his agents. The deputies are subject to Sheriff Stolle's control. VBSO's alleged spoliation actions as principal should not be attributable to Defendants because Defendants as agents had no control over VBSO's actions. While plaintiff argues that some of the deputies viewed the video, there is no evidence that they had control over the videos. In fact, the videos are the property of the VBSO.

Outside of the ordinary agency relationship, a non-party's duty to preserve can only be imputed when there is "some special relationship or duty arising by reason of an agreement, contract, statute, or other special circumstance." *Johns*, 503 F. Supp. 3d at 463 (quoting *Wilson v. Beloit Corp.*, 921 F.2d 765, 767 (8th Cir. 1990)). "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591; *accord King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 378 (4th Cir. 2006). Although nonbinding on this Court, Courts in this district have relied on the foregoing proposition from *Silvestri* in holding that a special relationship exists between the Virginia Department of Corrections ("VDOC") and its officers to justify VDOC's deletion of videos as imputable to its officers when VDOC "is aware that litigation is reasonably likely." *Raynor v. Pugh*, Civil Action No. 1:13cv1117 (LMB/JFA), 2016 U.S. Dist. LEXIS 187186, at *46 n.12 (E.D. Va. Oct. 21, 2016).[1] On at least one occasion, the Fourth Circuit has declined to impute VDOC's duty to preserve a video to a correctional officer wherein, *inter alia*, the correctional officer had no access or control to the video. *See Boone v. Everett*, 751 F. App'x 400, 402 (4th Cir. 2019).[2]

The two cases primarily relied upon by the plaintiff, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. Sept. 9, 2010) and *Johns v. Gwinn*, 503 F. Supp. 3d 452 (W.D. Va. 2020) are clearly distinguishable from the spoliation issue in this case. In *Victor Stanley*, the

---

[1] *See Johns*, 503 F. Supp. 3d at 470, 474; *Harvey v. Hall*, 2019 WL 1767568, at *5-6 (W.D. Va. Apr. 22, 2019); *Muhammad*, 2016 WL 8116155, at *8; *Raynor v. Pugh*, 1:13cv01117 (LMB/JFA), E.D. Va., Mem. Op. and Order, ECF No. 199, at 30 n.12 (filed Oct. 21, 2016).

[2] In Plaintiff's Memorandum in Support of this Motion, Plaintiff argues that *Boone v. Everett* is not binding and is distinguishable. Dkt. 121 at 11 n.4. Plaintiff is correct that *Boone* is not binding on this Court; however, Plaintiff fails to point out that all of the other cases cited by Plaintiff are also not binding. The only binding authority in this special relationship context is *Silvestri* and progeny, cases that neither involved corrections departments nor even mentioned the doctrine of special relationships in this context. Like the Defendant in *Boone*, the Defendants here viewed the video but did not have access or control of the video.

court found that defendants "set out to delete, destroy, or hide thousands of files containing highly relevant ESI pertaining to [p]laintiff's claims . . . lied about their ESI production; obstructed the discovery process; and intentionally destroyed evidence when they were aware of the lawsuit." *Id.* at 531. The spoliator destroyed the evidence after receiving a copy of the lawsuit, during the litigation and continued to violate Court orders concerning the preservation of the evidence.

In *Johns*, the plaintiff testified that the defendant "sprayed [him] in the face and chest for three to four minutes with oleoresin capsicum ("OC") spray by sticking his arm through a hinged feeding box attached to a tray slot on [p]laintiff's cell door," while the defendant denied the claim. *Id.* at 454. Two witnesses testified for the defendant that they reviewed video footage on the day of the incident *in response to plaintiff's grievances*. *Id.* (emphasis added). The witnesses said the video showed the defendant "at plaintiff's cell door with OC spray in hand," but did not show him reaching through the feeding box or dispensing OC spray on the plaintiff. *Id.*

Here, unlike *Victor Stanley* and *Johns*, the video was overwritten through no actions of the Defendants and nine months before the Defendants had knowledge of any potential claim. The plaintiff never filed a grievance or any other complaint about the deputies' actions. Accordingly, there is no evidence that the Defendants knew or should have known that the video would have supported or contradicted plaintiff's claims because there was no claim at the time, that it was, therefore, relevant to foreseeable litigation, and that they failed to take reasonable steps to preserve it. In fact, the Defendants were not required to take steps to preserve the video.

### a. Defendants Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs Were Not Required to Take Steps to Preserve the Video Footage.

Under the third prong of the Rule 37(e) test, the movant must show the spoliator "failed to take reasonable steps to preserve" the ESI. Fed. R. Civ. P. 39(e); *see Steves & Sons, Inc.*, 327

F.R.D. at 104. "The duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation; they need not 'preserve every shred of paper, every e-mail or electronic document, and every backup tape.'" *Steves & Sons, Inc.*, 327 F.R.D. at 108 (quoting *Jenkins*, 2017 U.S. Dist. LEXIS at *15). "[T]he 'standard reasonableness framework' [generally] require[s] a party to suspend its routine practices and put in place a 'litigation hold' to ensure the preservation of relevant documents and information." *Sines*, 2021 U.S. Dist. LEXIS at *13 (internal quotations and citations omitted). Beyond a litigation hold, "[w]hether a party reasonably should have taken additional or specific steps to preserve lost ESI may depend on the party's resources, technological sophistication, or familiarity with litigation generally." *Id.*

Here, Defendants were not required to take steps to preserve the video footage. Defendants' superiors, including Capt. Linda Richie, not Defendants, concluded there was no need to preserve the video footage because there was no inmate complaint, no violation of the use of force policy and no evidence of excessive force. The decision not to preserve rested with Capt. Linda Richie and Defendants should not be punished for failing to challenge their supervisors or otherwise failure to preserve something they had no control of or access to. Therefore, the Defendants had no duty to preserve the video. Even if VBSO owed a duty to preserve, which is disputed, the duty should not be imputed to Defendants who had no access or control to the videos.

B.   **The Plaintiff's Requested Sanctions are Inappropriate**

Even assuming *arguendo* that Sheriff Stolle had a duty to preserve the video, plaintiff cannot establish that Sheriff Stolle breached this obligation both with a culpable state of mind and with a degree of fault sufficient to support the extraordinary sanctions of denying any

renewed motion for summary judgment, granting an adverse inference instruction, precluding evidence by the Defendants that the video corroborated their version of events, or awarding attorney's fees and costs. *See Kolon Indus.*, 803 F. Supp. 2d at 71. There is no basis for plaintiff's conclusion that the video was intentionally destroyed. Plaintiff blatantly ignores these indisputable facts: (1) Mr. Goodman never made a complaint to the VBSO about the November 7, 2012 events, (2) Mr. Goodman never made a request to the VBSO or its employees to preserve the video, (3) the computer program for the VBCC' video system had been written to allow for 30 days' retention of video; (4) the video was automatically overwritten nine months before Sheriff Stolle's receipt of the plaintiff's Amended Complaint in August 2013.

In the Fourth Circuit, the degree of culpability or fault impacts the severity of sanctions, *Silvestri*, 271 F.3d at 590. Measured on a continuum from bad faith to willfulness, gross negligence, and to ordinary negligence, *Kolon Indus.*, 803 F. Supp. 2d at 71, only egregious conduct compels the sanctions plaintiff seeks. "'Destruction is willful when it is deliberate or intentional,' whereas bad faith destruction occurs when a party engages in destruction 'for the purpose of depriving the adversary of evidence.'" *Id*. at 72 (quoting *Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 820 (E.D.N.C. 2008)). In comparison with intentional, wanton, or willfully disregardful conduct, is "negligent conduct, or 'culpable carelessness,' [which] is '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation[.]'" *Id*. at 74 (quoting *Victor Stanley, Inc.*, 269 F.R.D. at 529). Further, gross negligence "is something more than carelessness, [and] 'differs from ordinary negligence only in degree, and not in kind.'" *Id*. In addition to the degree of culpability, the court must consider the extent of prejudice, if any, in determining the propriety of sanctions. *Samsung*, 439 F. Supp. 2d at 541.

Plaintiff seeks to (i) prevent the Defendants from filing a renewed motion for default judgment, (ii) have the Court grant an adverse inference instruction, (iii) preclude the Defendants from testifying the video corroborated their version of the events, and (iv) have the Court award attorney's fees, none of which are appropriate given the circumstances.

Here, plaintiff cannot establish that Sheriff Stolle's conduct was so egregious, or that plaintiff was so prejudiced as to be denied the ability to develop and prosecute his case, that his proposed sanctions would be warranted. First, as addressed in detail above, plaintiff cannot prove Sheriff Stolle's intent to destroy the video recordings or intent to deny plaintiff the evidence; he jumps to that conclusion by his own supposition and only by ignoring the indisputable fact that the system automatically overrode the video based on its settings. Second, the absence of video recordings is not equivalent to the destruction of the vehicle in *Silvestri*. Among other things, plaintiff has Mr. Goodman's jail file, including classification, housing, and incident reports, and Mr. Goodman's complete medical files from both the VBCC and the Chesapeake Correctional Center. Plaintiff has also had the opportunity to depose Sheriff Stolle's administrative staff and deputies with knowledge of Mr. Goodman's incarceration, as well as Conmed's medical staff, who saw Mr. Goodman during his incarceration and, in fact, plaintiff after the alleged altercation. Thus, plaintiff cannot demonstrate that preventing the Defendants from filing a renewed motion for default judgment, precluding the Defendants from testifying the video corroborated their version of the events, and awarding of attorney's fees, are appropriate spoliation sanctions in this matter.

Nor do the facts of this case justify plaintiff's request for an adverse inference instruction. To impose this type of sanction the Court must find that Sheriff Stolle "willfully deleted or destroyed evidence known to be relevant to an issue in the litigation." *Kolon Indus.*, 803 F.

Supp. 2d at 108 (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d. 148,156 (4th Cir. 1995)). In *Kolon Indus.*, the Court imposed an adverse inference sanction based on its finding that the defendant intentionally deleted relevant materials. Likewise, in *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494 (D.Md. 2009), the court granted an adverse inference instruction only upon a finding that the defendant company intentionally destroyed a computer and its employee intentionally deleted relevant emails. The court found that the failure to preserve the laptop and emails, the result of willful conduct, permitted the inference that the defendant feared to produce evidence that would have exposed unfavorable facts.

Absent a finding of willfulness, an adverse inference instruction is not warranted. For example, in *Pandora Jewelry LLC v. Chamilia, LLC,* No. CCB-06-3041, 2008 U.S. Dist. LEXIS 79232 (D.Md. Sept. 30, 2008), a patent infringement case, the court refused to grant an adverse inference without a showing of bad faith or intent. During the litigation the plaintiff sought emails from the defendant which had been deleted because the defendant "changed its electronic server twice during the litigation period or due to its email system forcing users to delete or archive emails every ninety days." *Id*. at *7. The court found that although the plaintiff accused the defendant of "'turn[ing] a blind eye toward document retention,'" the plaintiff offered no evidence that the defendant deliberately deleted or destroyed emails, as opposed to being grossly negligent in failing to issue a litigation hold. *Id*. at *28. The court concluded that a violation of the duty to preserve "does not necessitate a finding of willful or bad faith destruction." *Id*. at *29. *See Sampson v. City of Cambridge*, 251 F.R.D. 172 (D.Md. 2008) (finding that while electronic documents under the defendant's control were lost or destroyed after the duty to preserve arose, plaintiff could not establish bad faith in part because plaintiff lacked evidence that defendant purposely destroyed documents).

Here, there is no evidence that Sheriff Stolle acted "willfully in the destruction of relevant evidence" with regard to the erasure of the video recordings. *Vodusek*, 71 F.3d at 156. Even assuming for argument's sake that the Court agrees with plaintiff that Sheriff Stolle had a duty to preserve the video, there is no evidence that Sheriff Stolle, Capt. Linda Richie, Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs or anyone else intentionally orchestrated the overwriting of the video recordings. While plaintiff parses their words to challenge the efficacy of the Sheriff's document retention procedure, that alone does not translate into a finding that the video was willfully destroyed. As the cases cited above make clear, a plaintiff must produce evidence of deliberate destruction. An adverse inference instruction is not warranted in this circumstance. *See Sampson*, 251 F.R.D. at 181 ("If a spoliator's conduct is merely negligent … the adverse inference instruction is not an appropriate sanction.").

### III.  CONCLUSION

For the reasons set forth herein, Defendants Curtis Hayes, Todd Moissett, Crystal Repass, and Zachary Diggs, by counsel, respectfully request the Court to deny Plaintiff's Motion for Sanctions Pursuant to Rule 37(e).

C. HAYES,  
T. MOISSETT  
C. REPASS  
Z. DIGGS  

By: _____/s/_____  
Of Counsel

Jeff W. Rosen, Esq. VSB No. 22689
Lisa Ehrich, Esq. VSB No. 32205
PENDER & COWARD, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, VA 23462
Phone: (757) 490-6293
Fax:    (757) 497-1914
jrosen@pendercoward.com
lehrich@pendercoward.com
*Counsel for Hayes, Moissett, Repass & Diggs*

# CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of November, 2021 I will electronically file the foregoing ***Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions Pursuant to Rule 37(e)*** to the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Lauren M. Cassady, Esq. (VSB #92149)
Philip A. Sechler, Esq. (DCB #426358)
Robbins, Russell, Englert,
Orseck & Untereiner LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Phone: (202) 775-4500
Fax:    (202) 775-4510
lcassady@robbinsrussell.com
psechler@robbinsrussell.com
*Counsel for Plaintiff*

                                        /s/
Jeff W. Rosen, Esq., VSB #22689
PENDER & COWARD, PC
222 Central Park Avenue
Virginia Beach, VA 23462
Phone: (757) 490-6293
Fax:    (757) 497-1914
jrosen@pendercoward.com
*Counsel for Hayes, Moissett, Repass & Diggs*