IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| DAVID GRAHAM GOODMAN,<br><br>        Plaintiff,<br><br>v.<br><br>KENNETH W. STOLLE, ET AL.,<br><br>        Defendants. | Civil Action No. 1:13-cv-540 |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR SANCTIONS PURSUANT TO RULE 37(e)**

Philip A. Sechler (*pro hac* vice)
Lauren C. Andrews (VA Bar No. 92149)
ROBBINS, RUSSELL, ENGLERT,
 ORSECK & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
landrews@robbinsrussell.com

*Counsel for Plaintiff*

Dated: November 12, 2021

# INTRODUCTION

The crux of Defendants' opposition to Goodman's motion for sanctions is their argument that the Virginia Beach Sheriff's Office ("VBSO") did not have a duty to preserve the video recordings until after they were already lost. But Defendants' assertion that the VBSO (and the Defendants themselves) could not reasonably have anticipated litigation within thirty days of the incidents with Goodman is disingenuous at best. Defendants mischaracterize the record evidence, which clearly shows that multiple officers within the VBSO knew about the incidents and the video recordings. The evidence also shows that the VBSO either was aware or reasonably should have been aware of Goodman's complaint and specific request for the videos to Nurse Hoyles, who worked at the Virginia Beach Correctional Center ("VBCC") and whose medical notes—which recorded Goodman's request—were in the VBSO's possession at the VBCC. Furthermore, Defendants are flat wrong about the appropriateness of the sanctions Goodman seeks, which are necessary to address the VBSO's spoliation and remedy the resulting prejudice to Goodman.

# ARGUMENT

## I.   THE VBSO HAD A DUTY TO PRESERVE THE VIDEO FOOTAGE

It is not merely the service of a complaint that triggers a party's duty to preserve relevant evidence. "The duty to preserve material evidence arises not only during litigation but also extends to *that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.*" *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (emphasis added); *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 106 (E.D. Va. 2018) ("courts in the Fourth Circuit have found that . . . a request for evidence preservation [or] a threat of litigation . . . will all trigger the duty to preserve evidence"). There is

ample evidence in this case that both the VBSO and the Defendants reasonably should have anticipated litigation before Goodman's complaint was served.

### A. The VBSO Was Aware Of Goodman's Complaint To Nurse Hoyles.

Goodman complained to Nurse Hoyles (the nurse who treated him at the VBCC following the second assault) and specifically told her not only that he wanted to file a lawsuit against Defendants, but that he wanted the videos of the assaults for that lawsuit. *See* Ex. 1 (Nurse Hoyles's note as produced by the VBSO). Defendants try to deflect this damning evidence by arguing that Nurse Hoyles worked for an independent medical subcontractor.[1] But the technical details of her employment status do not change the fact that the VBSO had knowledge of Goodman's complaint to Nurse Hoyles.

The record evidence on this point is clear. Nurse Hoyles worked at the VBCC, saw Goodman in his cell following the altercation, and treated him at the VBCC's medical office. *See* Ex. 1. She recorded the interaction, including Goodman's complaint and request for the videos, in a note that was saved to Goodman's medical file at the VBCC and produced by the VBSO in response to a subpoena to Sheriff Stolle in this case. *See id.*[2] And Captain Linda Richie was able to access and download this medical file. *See* Ex. 2 (Richie Dep.) at 52-53.

Defendants assert, with no basis whatsoever, that inmates' medical records are not shared with the VBSO "pursuant to HIPAA." *See* Doc. No. 156 (Defs' Opp.) at 8. This is the first

---

[1] Counsel for Defendants previously informed counsel for Goodman that Nurse Hoyles worked for a subcontractor called ConMed, Inc. There is no basis in the record in this case for Defendants' bare assertion that the City of Virginia Beach contracted with ConMed, Inc., which is presumably also intended to deflect responsibility from the VBSO. S*ee* Doc. No. 156 (Defs' Opp.) at 9.

[2] The "STOLLE 020" and "STOLLE 021" Bates stamps in the lower right corner of this document indicate that it was produced by Sheriff Stolle during discovery. *See* Ex. 1.

Goodman has heard of any alleged HIPAA concerns, and there is no evidence that Defendants' claim is true. It is directly contradicted by Captain Richie's testimony that she could and did access the medical records, including Nurse Hoyles's note, for purposes of defending this lawsuit. *See* Ex. 2 (Richie Dep.) at 52-53 ("I downloaded the files [including Nurse Hoyles's note] to turn over to the attorney."). Indeed, Defendants have already had the benefit of Nurse Hoyles's note in this litigation—they attached it to their original motion for summary judgment. *See* Doc. No. 68-1 at 2-3.

Furthermore, according to VBSO policy, Nurse Hoyles was required to report Goodman's complaint to her superiors. *See* Ex. 2 (Richie Dep.) at 20. Defendants mischaracterize the evidence when they state that "[t]he nurse never reported Mr. Goodman's comments." Defs' Opp. at 7. In fact, Captain Richie's testimony was that she did not know whether Nurse Hoyles notified anyone in the VBSO about Goodman's complaint. Ex. 2 (Richie Dep.) at 54 ("Q. So do you know if [Nurse Hoyles] notified anyone in the sheriff's office about this complaint that Mr. Goodman made? . . . A. No, *I don't know*.") (emphasis added). And none of this alters the fact that Nurse Hoyles recorded Goodman's complaint and request in the medical notes kept in Goodman's file at the VBCC, which the VBSO later accessed and produced.

### B. The VBSO Was Aware Of The Incidents And The Relevant Video Footage.

Goodman's complaint to Nurse Hoyles is not the only factor that alerted the VBSO to the possibility of litigation and the duty to preserve the videos. There is overwhelming record evidence that multiple VBSO officers—including Defendants, Captain Richie, and others—were well aware of Defendants' uses of force long before they received notification of the lawsuit in August 2013.

Before the videos were overwritten (*i.e.*, within thirty days of the incidents involving Goodman), Defendants, their supervisors in the chain of command, and VBSO officers in the

3

Professional Standards Office ("PSO") knew that the four Defendants had used force against Goodman, Goodman had required medical treatment, and the incidents had been captured on video. *See* Doc. No. 68-1 at 4-5 (Hayes's and Repass's incident reports, noting that Goodman was seen by medical staff and that video footage was reviewed). Multiple officers, both in the chain of command above the deputies and in the PSO, then reviewed the incident reports and the video footage. *See* Ex. 2 (Richie Dep.) at 12-14, 48-49.[3] It is clear that the VBSO knew, before the videos were overwritten, that Goodman had been injured in altercations that were serious enough to merit use-of-force incident reports and medical attention.

The VBSO should therefore reasonably have anticipated litigation, given that they had reviewed video footage of four different officers dragging Goodman across the floor, roughly handcuffing him, or kneeling and standing on him. *See Alston v. Bellerose*, 2016 WL 4098726, at *2 (D. Conn. Jul. 28, 2016) ("Clearly, videotape of a physical altercation may be relevant to future litigation, especially inside the prison context.") Defendants' attempt to distinguish *Taylor v. City of N.Y.*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013), misses the mark. Courts have held that correctional departments should reasonably have anticipated litigation when an inmate is involved in a physical altercation, even without evidence that the department is experienced with such lawsuits. *See*

---

[3] Defendants' statement that "Linda Richie was assigned to investigate," which suggests she was the only investigator, is directly at odds with Captain Richie's own testimony. *See* Defs' Opp. at 7. Richie testified that in any use-of-force incident, "the immediate supervisors will review that incident, both the report and the cameras," as well as "their chain of command . . . their lieutenant, their captain . . . all the way up to the chief." Ex. 2 (Richie Dep.) at 12-14. Richie also testified that "internal affairs [also known as the PSO] would review all incident reports and any video footage" as a "separate reviewing system[]." *Id.* at 35.

Incredibly, Defendants' brief also appears to invent facts out of thin air. They assert that Captain Richie "interviewed the deputies who she thought would be most important to the investigation." Defs' Opp. at 7. Richie never testified that she interviewed anyone, and there is no evidence that the deputies or anyone else was interviewed by VBSO officers about the incidents with Goodman.

*Barnes v. Harling*, 368 F. Supp. 3d 573, 607 (W.D.N.Y. 2019) ("in the correctional context, a duty to preserve may attach when an inmate is in a fight").

It may well be the case that "[i]nmates are transported between cells all the time," (Defs' Opp. at 8-9), but Goodman was not merely "transported between cells" on November 7, 2012. Even crediting Defendants' version of events, Goodman was dragged across the floor, handcuffed, knelt on, and subjected to pain compliance. Surely, one hopes, that does not happen "all the time" at the VBCC. Such an unusual and serious altercation between an inmate and jail officers should reasonably have alerted the VBSO to possible litigation.

### C. The VBSO's Spoliation Should Be Attributed To The Individual Defendants.

Like the VBSO, Defendants themselves were well aware of the force they used against Goodman and his resulting injuries, and they should therefore reasonably have anticipated litigation. Defendants and the VBSO shared a duty to preserve relevant evidence, including the video footage, and the VBSO's spoliation should be attributed to Defendants for purposes of sanctions in this case.

Defendants argue that they, as agents of the VBSO, cannot have the VBSO's spoliation attributed to them. *See* Defs' Opp. at 9-10. That argument turns the spoliation inquiry in the prison litigation context on its head. "Ordinarily, the attribution of fault to one party for another's spoliation is analyzed under principles of agency." *Muhammad v. Mathena*, 2016 WL 8116155, at *7 (W.D. Va. Dec. 12, 2016) (quoted in Defs' Opp. at 9). But Defendants ignore that the court in *Muhammad* went on to say that this agency-based rule "would present a dilemma in the context of prison litigation . . . where the responsibility for preserving evidence may be spread out among multiple officials within an institution and where the institutions themselves are typically immune from suit." *Id.* The court accordingly held that it was appropriate to impute the correctional

5

institutions' spoliation to the individual defendants. *Id.* at *8 ("imputation of the Respondents' negligent spoliation to the Defendants is necessary here in order to avoid unfair prejudice to Muhammad"). And Defendants likewise ignore that several other courts have followed the same reasoning in imputing a department's spoliation to its individual officers. *See Johns v. Gwinn*, 503 F. Supp. 3d 452, 470-74 (W.D. Va. 2020); *Raynor v. Pugh*, 1:13cv01117 (LMB/JFA), E.D. Va., Mem. Op. and Order, ECF No. 199, at 30 n.12 (filed Oct. 21, 2016); *Harvey v. Hall*, 2019 WL 1767568, at *5-6 (W.D. Va. Apr. 22, 2019); *Pettit v. Smith*, 45 F. Supp. 3d. 1099, 1110 (D. Ariz. 2014); *Woods v. Scissons*, 2019 WL 3816727, at *6 (D. Ariz. Aug. 14, 2019).

Defendants next argue that both *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010) and *Johns*, 503 F. Supp. 3d 452, are distinguishable. *See* Defs' Opp. at 10-11. *Victor Stanley* involved intentional spoliation, as does this case. But regardless of the level of fault—which is distinct from the question of whether there was spoliation—the rule in the Fourth Circuit is that evidence is "considered to be under a party's control when that party has the right, authority, or practical ability to obtain the [evidence] from a non-party to the action." *Victor Stanley*, 269 F.R.D. at 523 (internal quotation marks omitted). Defendants here had the practical ability to obtain the video footage from the VBSO: Not only were they able to view the footage before writing their incident reports, they requested the footage from the VBSO in response to this Court's order (by which time, of course, the footage had already been deleted).

*Johns*, contrary to Defendants' argument, is entirely on all fours with this case. In *Johns*, officers other than the defendants reviewed the video footage, relied on it in determining not to take internal action against the defendants, and allowed it to be automatically overwritten pursuant to departmental policy. *See* 503 F. Supp. 3d at 459. That is precisely what happened in this case: Defendants' supervisors and PSO officers reviewed the video footage, relied on it in determining

6

not to pursue further formal investigation of Defendants' use of force, and allowed it to be automatically overwritten in accordance with their policy. In such circumstances, "to not impute spoliation to Defendant[s] here would lead to absurd results" and would allow a "correctional facility [to] wrongly destroy any piece of evidence in its control with near-zero risk of consequence in prisoner suits." *Id.* at 463-64.

Finally, Defendants halfheartedly argue that they were not required to take steps to preserve the video footage, which is essentially the same as arguing that they had no duty to preserve. *See* Defs' Opp. at 11-12. But this entirely misconstrues Goodman's argument: The VBSO had a duty to preserve the video footage, and the VBSO was the entity that could take steps to fulfill that duty by downloading the footage. Indeed, Defendants acknowledge as much when they state that "[t]he decision not to preserve rested with Capt. Linda Richie." Defs' Opp. at 12. But Goodman cannot sue Captain Richie for spoliation, and the VBSO should "not be rewarded for its policy of attempting to insulate responsibility for spoliation to a select few unreachable in the vast majority of suits by inmates." *See Johns*, 503 F. Supp. 3d at 470. The VBSO's violation of their clear duty to preserve the video footage should be imputed to Defendants.

## II.   GOODMAN'S REQUESTED SANCTIONS ARE APPROPRIATE

### A.  Goodman Is Entitled To An Adverse Inference Instruction.

When the Fourth Circuit considered this case very case on appeal from summary judgment, they suggested the VBSO's failure to preserve the video after reviewing it "may warrant an adverse inference against the officers." *See Goodman v. Diggs*, 986 F.3d 493, 497 n.6 (4th Cir. 2021). Defendants acknowledge that an adverse inference jury instruction is an appropriate sanction in cases of intentional spoliation, but argue that there is no evidence of intent here. However, none of the facts Defendants cite in support of their argument are borne out by the record:

- It is not true that "Mr. Goodman never made a complaint to the VBSO about the November 7, 2012 events." *See* Defs' Opp. at 13. Goodman did complain to Nurse Hoyles, who noted the complaint in Goodman's VBCC file and who was also required to report that complaint to supervisors. *See* Ex. 1; Ex. 2 (Richie Dep.) at 20.

- It is not true that "Mr. Goodman never made a request to the VBSO or its employees to preserve the video." *See* Defs' Opp. at 13. Again, Goodman specifically communicated his desire for the videos to Nurse Hoyles, who recorded the request in Goodman's VBCC file. *See* Ex. 1.

- Regardless of whether "the computer program for the VBCC's video system had been written to allow for 30 days' retention of video," *see* Defs' Opp. at 13, the VBSO could have downloaded the video footage before the thirty days were up. *See* Ex. 2 (Richie Dep.) at 18. It is undisputed that the VBSO failed to do so.

- It is of no consequence that "the video was automatically overwritten nine months before Sheriff Stolle's receipt of the plaintiff's Amended Complaint in August 2013." *See* Defs' Opp. at 13. For the reasons stated above and in Goodman's opening brief, Defendants and the VBSO were well aware of the possibility of litigation long before Sheriff Stolle received the complaint, and were therefore under a duty to preserve the footage before it was overwritten.

The VBSO's policy is to download and preserve video footage whenever there is an inmate complaint, including a complaint to medical staff. *See* Ex. 2 (Richie Dep.) at 18-20. Even if Nurse Hoyles did not verbally report Goodman's complaint, she recorded it in Goodman's medical file at the VBCC, which was accessible to the VBSO. The VBSO was therefore on notice of

8

Goodman's request and aware of the videos' relevance, but nevertheless chose to ignore their policy and allow the videos to be overwritten. That is intentional spoliation, and according to Rule 37(e)(2), an adverse inference is an appropriate sanction.

### B. In The Alternative, Goodman Is Entitled To The Other Sanctions He Seeks.

Even if this Court does not find that the VBSO acted intentionally, the remainder of Goodman's requested sanctions are entirely appropriate remedies for negligent or grossly negligent spoliation. They are not "extraordinary" sanctions—they are precisely what Rule 37(e) contemplates in response to non-intentional spoliation. *See* Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment ("In an appropriate case, it may be that serious measures are necessary to cure prejudice found by the court, ***such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument***, other than instructions to which subdivision (e)(2) applies.") (emphasis added).

And courts have routinely ordered the same sanctions Goodman seeks in other cases of negligent or grossly negligent spoliation. *See, e.g.*, *Butler v. Kroger Ltd. P'ship I*, 2020 WL 7483447, at *9 (E.D. Va. Nov. 30, 2020) (for negligent spoliation, court ordered denial of defendants' motion for summary judgment, a jury instruction that defendants lost video, and preclusion of defendants' testimony as to what the video showed); *Jenkins v. Woody*, 2017 WL 362475, at *18 (E.D. Va. Jan. 21, 2017) (for negligent spoliation, court ordered a jury instruction that video was lost, preclusion of evidence that the video corroborated defendants' version of events, and monetary sanctions); *Muhammad*, 2016 WL 8116155, at *9 (for negligent spoliation, court ordered preclusion of evidence of the video's contents or plaintiff's disciplinary charges, a

9

jury instruction that plaintiff requested the video but it was lost, and a jury instruction that jurors should not assume the lack of corroborating evidence undermines plaintiff's version of events).

These sanctions are necessary to remedy the enormous prejudice to Goodman from the loss of the video evidence. Defendants claim that Goodman is not prejudiced because he has other evidence available (*see* Defs' Opp. at 14), but none of the other evidence Defendants point to would tell the jury what happened between Goodman and the Defendants at the VBCC. *See Pettit*, 45 F. Supp. 3d at 1111 ("The fact that other evidence about the incident is available does not diminish the relevance of the missing evidence."). Neither Goodman's jail and medical files nor the testimony of other VBCC staff can reveal whether Hayes, Diggs, Moissett, and Repass slammed Goodman to the ground, dragged him across the floor, yanked his arms over his head to handcuff him, stood or knelt on his back, neck, and hand, pushed his face into the floor, or threw him into his cell in order to punish or harm him. *See Pettit*, 45 F. Supp. 3d at 1111 ("The Court and Plaintiff can take no comfort in Defendants' assertion that defense witnesses, who will favor the defense position, can testify about these events at trial. . . . The video camera was an objective witness that bore neither the potential pro-defense leanings of the defense witnesses nor the credibility problems of Plaintiff.").

The video footage is "essential to [Goodman's] underlying claim." *See Victor Stanley*, 269 F.R.D. at 531 (internal quotation marks omitted). It is "the best and most compelling evidence of what happened" to Goodman, and unlike witness testimony, it is "the only unbiased and dispassionate depiction of events." *See Jenkins*, 2017 WL 362475, at *18. Goodman has been significantly prejudiced by the loss of this critical evidence, and "serious measures are necessary to cure [his] prejudice." *See* Fed. R. Civ. P. 37(e) advisory committee notes to 2015 amendment.

## CONCLUSION

Goodman respectfully requests that the Court order the sanctions against Defendants as described in Goodman's opening motion for sanctions (Doc. No. 140), including jury instructions, preclusion of evidence, and attorneys' fees.

Dated: November 12, 2021

Respectfully submitted,

/s/ Lauren C. Andrews
Philip A. Sechler (*pro hac* vice)
Lauren C. Andrews (VA Bar No. 92149)
ROBBINS, RUSSELL, ENGLERT, ORSECK
& UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
landrews@robbinsrussell.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 12, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Jeff Wayne Rosen
Jeffrey A. Hunn
PENDER & COWARD PC
222 Central Park Ave, Suite 400
Virginia Beach, VA 23462
Tel: (757) 490-6253
jrosen@pendercoward.com

*Counsel for Defendants*

                                               /s/ Lauren C. Andrews
                                               Lauren C. Andrews (VA Bar No. 92149)
                                               ROBBINS, RUSSELL, ENGLERT,
                                               ORSECK & UNTEREINER LLP
                                               2000 K Street, N.W., 4th Floor
                                               Washington, D.C. 20006
                                               Tel: (202) 775-4500
                                               Fax: (202) 775-4510
                                               landrews@robbinsrussell.com

                                               *Counsel for Plaintiff*