# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| DAVID GRAHAM GOODMAN, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH W. STOLLE, ET AL., <br><br> Defendants. | Civil Action No. 1:13-cv-540 |

## SUPPLEMENTAL BRIEF IN SUPPORT OF
## MOTION FOR SANCTIONS PURSUANT TO RULE 37(e)

Philip A. Sechler (*pro hac* vice)
Lauren C. Andrews (VA Bar No. 92149)
ROBBINS, RUSSELL, ENGLERT,
  ORSECK & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
landrews@robbinsrussell.com

*Counsel for Plaintiff*

Dated: November 24, 2021

Plaintiff David Graham Goodman ("Goodman") respectfully submits this supplemental brief, pursuant to the Court's Order dated November 19, 2021 (Doc. No. 162), in order to place before the Court additional evidence in support of Goodman's argument that the Virginia Beach Sheriff's Office ("VBSO") should reasonably have anticipated litigation before the videos in question were overwritten. For the Court's convenience, Goodman attaches as exhibits to this brief all record evidence cited herein, including documents and exhibits that were previously filed in this case.

### A. The VBSO Was Aware Of Goodman's Complaint And Request For Videos On November 7, 2012.

The VBSO should reasonably have anticipated litigation based on Goodman's complaint to Nurse Hoyles on November 7, 2012, because there is uncontradicted evidence that the complaint was made in the presence of a VBSO sergeant. After Goodman's second incident with VBSO officers (the incident involving Defendants Moissett, Diggs, and Repass), Goodman was treated for his injuries by Nurse Hoyles. According to the medical note Nurse Hoyles wrote that day, Goodman "stated he was upset and expressed his interest in viewing the videos for a lawsuit against those involved in the incident." *See* Ex. 1 (Hoyles note).

Goodman has given multiple sworn statements, under penalty of perjury, that a VBSO sergeant was present during his encounter with Nurse Hoyles. In his verified original complaint filed in this case on May 1, 2013, Goodman stated: "When taken to medical that night[] for treatment, I told the sergeant (name unknown) and the nurse on duty (name unknown) I needed treatment, requested to be taken to hospital, request was denied." *See* Ex. 2 (Original Complaint, Doc. No. 1) at 5. In his verified first amended complaint, Goodman similarly stated: "When taken to medical that night for treatment after the assault I told the sergeant (name unknown) and the

1

nurse (unknown name) I needed treatment/hospital." *See* Ex. 3 (First Amended Complaint, Doc. No. 10), at 5.

Goodman reiterated this testimony at his deposition:

> "A.   . . . [T]he nurse suggested that I be taken to the hospital, and she believed also that I had a concussion. **And the sergeant that was in medical refused that treatment.**
>
> [. . .]
>
> Q.   Did you hear a conversation between the nurse who treated you and the sergeant?
>
> A.   Yes, I did.
>
> Q.   And what did she say to the sergeant and what did the sergeant say to her?
>
> A.   She told the sergeant point blank that I needed to be taken to the hospital, x-rayed, and examined further for a concussion; that she felt I had a probable concussion. **And the sergeant looked at her and then at me and said, 'Denied.'**"

Ex. 4 (Excerpt of Goodman Dep.) at 131-33 (emphasis added).

As explained in Goodman's reply brief (Doc. No. 158), the VBSO had access to Nurse Hoyles' note in Goodman's jail file. But even assuming that Nurse Hoyles' note alone did not put the VBSO on notice of a possible lawsuit, the presence of a VBSO sergeant during the encounter in which Goodman made his complaint and request for the videos absolutely did put the VBSO on notice. *See, e.g.*, *E.I. du Pont de Nemours and Co. v. Kolon Indust., Inc.*, 803 F. Supp. 2d 469, 506-07 (E.D. Va. 2011) ("Standard principles of agency law govern the attribution of employees' spoliation to the company. . . . 'An employer is liable for any acts committed by employees acting within the scope of their employment.'") (quoting *Nucor Corp. v. Bell*, 251 F.R.D. 191, 196 (D.S.C. 2008)). The VBSO was therefore aware of Goodman's intent to file a lawsuit and his

2

interest in videos of the incident on November 7, 2012, and should reasonably have anticipated litigation as of that day.

### B. The VBSO Also Should Reasonably Have Anticipated Litigation Based On The Severe Force Defendants Admittedly Used Against Goodman.

Furthermore, the VBSO should reasonably have anticipated litigation as soon as supervisors and internal affairs officers within the VBSO reviewed Defendants' incident reports (and the videos of the incidents) and were made aware of the level of force Defendants used. Of course, Goodman alleges extremely severe force by Defendants, but the Court need not resolve at this stage whether Goodman's allegations of force are all true. Defendants' incident reports, along with their deposition testimony, admit that they employed serious and significant force against Goodman.

Defendants have argued that the incidents involving Goodman were essentially routine encounters with an uncooperative inmate. But these encounters were anything but routine, and Defendants' own statements reveal the unusual and severe nature of the incidents.

*First Incident.* According to his incident report, Deputy Hayes "took hold of [Goodman's] left arm near his arm pit and stood him up," then "dragged him into the cell" in the intake area. *See* Ex. 5 (Incident Reports) at 1.

*Second Incident.* Deputy Repass stated in her incident report that she "took a hold of [Goodman's] right arm and . . . began pulling him down the hallway" with Deputy Diggs. *See* Ex. 5 at 2 (Repass Report); *see also id.* at 3 (Diggs Memorandum). Diggs explained at his deposition that he and Repass "grabbed [Goodman] by his wrist, forearm, underneath his armpit, just physically started dragging him down the hallway." *See* Ex. 6 (Excerpt of Diggs Dep.) at 29-30. Repass also "accessed a pressure point behind Goodman's right ear to keep him on the ground," and once Goodman was handcuffed, she "took a hold of the handcuffs and pulled up towards the

3

ceiling to assist Goodman to his feet." *See* Ex. 5 at 2.  Shortly thereafter, once Goodman was in his new cell in the medical block, Diggs "placed [his] knee in the T-3 area of [Goodman's] back in order to maintain control of him." *See id.* at 3.

Even if the Court assumes, for the sake of Goodman's motion for sanctions, that Defendants' version of events is true, this was not a routine encounter involving the minimal force necessary to move Goodman.  Dr. Dora Schriro, an expert in corrections and correctional use of force retained by Goodman, reviewed Defendants' incident reports and deposition testimony.  Dr. Schriro concluded that, even according to Defendants' version of events, all four Defendants used greater force than was necessary to control Goodman.  *See* Ex. 7 (Schriro Rpt.) ¶¶ 61, 69, 74, 81.

At a minimum, the incident reports and videos reviewed by the VBSO revealed serious uses of force by Defendants, if not the extreme and excessive force Goodman alleges.  Such unusual incidents should reasonably have led the VBSO to anticipate litigation.  Coupled with the uncontradicted evidence that a VBSO sergeant was present when Goodman stated his intent to file a lawsuit and his request for the videos, there is clear and convincing evidence that the VBSO reasonably should have anticipated litigation following the incidents on November 7, 2012, and therefore had a duty to preserve the videos.

## CONCLUSION

Goodman respectfully requests that the Court order the sanctions against Defendants as described in Goodman's opening motion for sanctions (Doc. No. 140), including jury instructions, preclusion of evidence, and attorneys' fees.

Dated: November 24, 2021

Respectfully submitted,

/s/ Lauren C. Andrews
Philip A. Sechler (*pro hac* vice)
Lauren C. Andrews (VA Bar No. 92149)
ROBBINS, RUSSELL, ENGLERT, ORSECK
& UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
landrews@robbinsrussell.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following:

Jeff Wayne Rosen
Jeffrey A. Hunn
PENDER & COWARD PC
222 Central Park Ave, Suite 400
Virginia Beach, VA 23462
Tel: (757) 490-6253
jrosen@pendercoward.com

*Counsel for Defendants*

/s/ Lauren C. Andrews
Lauren C. Andrews (VA Bar No. 92149)
ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP
2000 K Street, N.W., 4th Floor
Washington, D.C. 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
landrews@robbinsrussell.com

*Counsel for Plaintiff*